Gerald L. WILKE and Diane K. Wilke, James V. Swift and Dorothy V. Swift, on behalf of themselves and on behalf of all others similarly situated, Plaintiffs-Respondents,†

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF EAU CLAIRE, Defendant-Appellant.

Denison L. WILLIAMS and Cherlon F. Williams, on behalf of themselves and on behalf of all others similarly situated, Plaintiffs-Respondents,

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF EAU CLAIRE, Defendant-Appellant.

Court of Appeals

*No. 81–1633. Submitted on briefs May 6, 1982.— Decided July 27, 1982.*
(Also reported in 323 N.W.2d 179.)

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *John D. Hibbard, Donald R. Marjala* and *Hibbard, Proctor, Schrage & Marjala* of Eau Claire.

For the respondents the cause was submitted on the joint brief of *John A. Kaiser* and *Losby, Riley, Farr & Ward* of Eau Claire, and *James N. Youngerman* and *Montie & Youngerman* of Madison.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.   The issue is whether the interest-escalation clause in the parties' notes allows a federal savings and loan association to increase the interest portion of each monthly payment, in effect, reamortizing the loan over a longer period without changing the monthly payment. The circuit court concluded it does not.   We reverse.

The named borrowers brought these actions, consolidated by stipulation, for declaration of their rights. They sought to require First Federal Savings and Loan Association of Eau Claire (First Federal) to roll back the escalated interest on loans to themselves and similarly situated borrowers.   Because summary judgment was granted only in favor of the named borrowers, the notes between First Federal and the other members of the proposed class are not before us on appeal.

At the time the named borrowers financed their homes, First Federal used a note with the following escalator clause:

The interest rate provided herein may be increased or decreased at the option of the Association, with a corresponding adjustment in the required monthly payment. However, the Association shall not increase the rate of interest until after three years from the date of this note, and then only upon at least four months' written notice to the Promisors and Mortgagors who may then repay the loan within such notice period without penalty.

Effective April 10, 1972, federal regulations codified at 12 C.F.R. § 541.14(a) provided:

*Installment loan.*  The term 'installment loan' means any

loan repayable in regular periodic payments sufficient to retire the debt, interest and principal, within the loan term. However, no required payment after the first payment shall be more, but may be less, than any preceding payment.

The named borrowers purchased homes with loans from First Federal, closing after April 10, 1972. The loans were amortized over twenty-five years, but the note stated that the loan should be "paid in full" within the time prescribed by law, which at that time was thirty years.

First Federal mailed notices in November, 1979, informing the borrowers of an increase effective April 1, 1980. First Federal collected a higher rate of interest by increasing the interest portion of each monthly payment. Since the principal payments were smaller each month, each loan was effectively extended over a term longer than twenty-five years. The adjustment did not cause any of the loans to extend beyond thirty years, however.

The trial court interpreted the escalator clause to allow increases or decreases only by changing the amount of the total monthly payment. Since federal regulation prohibited raising the monthly payment, the circuit court's interpretation left First Federal with no way to increase the interest rate on the named borrowers' loans.

The named borrowers assert the increase in payment to be the only method of imposing a rate increase permitted by the clear and unambiguous language of the note. If the note is found ambiguous, they contend that the ambiguity should be construed against the drafter, First Federal. First Federal argues that the escalation clause in its note is not ambiguous, but is flexible, permitting it to effect increases in the interest rate by adjusting the proportion of interest to principal in each monthly payment and extending the term or by raising the monthly payment.

The circuit court did not think the escalation clause was ambiguous and, apparently, neither did the parties arguing the motion for summary judgment, though they could not agree on its unambiguous effect. Ambiguity exists when a statute or contract "is capable of being understood by reasonably well-informed persons in either of two or more senses." *Security Savings & Loan Association v. Wauwatosa Colony, Inc.*, 71 Wis.2d 174, 179, 237 N.W.2d 729, 732 (1976). A clause is not ambiguous, however, merely because its language is generally enough to encompass more than one option. Broad terms may be used to permit flexibility in the choice of methods available without creating an ambiguity. The term "corresponding adjustment in the required monthly payment" is an example. The interpretation advanced by named borrowers, though reasonable, does not preclude application of the interpretation advanced by First Federal.

There is more than one way to make a "corresponding adjustment in the required monthly payment." It may refer to a change in the total amount of the payment, as the named borrowers argue. It could mean reamortizing the loan over a longer period so that a greater portion of the present payments would be allocated to interest. It could also mean reamortizing with the intent to collect only the number of payments that the borrower had remaining in his previous amortization schedule and to forgive any balance remaining. Under the latter option, First Federal would collect the full amount of principal only if the loan were paid off before the original schedule would have run, a likely occurrence. This option, suggested in *Beal v. First Federal Savings & Loan Association*, 90 Wis. 2d 171, 194, 279 N.W.2d 693, 703 (1979), has not been selected by First Federal, though First Federal contends that it is available.

This is not a case in which one interpretation excludes action under another interpretation. The language is broad enough to include more than one option, and only one option was foreclosed by the regulation effective April 10, 1972. First Federal could have changed the form of the note to describe the escalation process more explicitly after the rule change, as it apparently has since the institution of this action, but this was not necessary to preserve a method permitted by the old form and not proscribed by federal regulation.

Although we do not consider the language ambiguous, if it is, it should be construed in light of the parties' intent and the purpose of the contract. The borrowers argue that it must be construed against the drafter, First Federal. Construction of an ambiguous contract clause against the drafter is a general rule to be followed only where consistent with the language of the whole contract and the intent of the parties. The purpose of the rules of contract construction is to aid ascertainment of this intent. *Goebel v. First Federal Savings & Loan Association*, 83 Wis. 2d 668, 675, 266 N.W.2d 352, 356 (1978).

In *Security Savings & Loan*, 71 Wis. 2d at 181, 237 N.W.2d at 733, the court construed an escalation clause to permit more than one escalation, although the clause did not specify that multiple increases were permissible. The clause was written in the terms of the statute allowing escalation, sec. 215.21(3)(b), Stats., and the court construed the statute and the note in light of "the scope of the statute, the policy behind the clause, [and] the ability of savings and loan associations to effectively manage the funds of its members and at the same time provide funds for borrowers." *Id.* at 183, 237 N.W.2d at 734.

In *Beal*, 90 Wis.2d at 176–77, 279 N.W.2d at 695, federal regulations prevented the association from increasing the monthly payment or extending the loan. The association attempted to collect more interest early in the loan, decreasing the rate at the end to allow repayment within the thirty-year limit. The court found the meaning of the terms in the applicable regulations subject to differing interpretations but did not apply rules of construction because the interpretation by the Federal Home Loan Bank Board was consistent with the language and not clearly erroneous. We have been offered no agency interpretation of the regulations applicable to this case that favors First Federal and are left to interpret the language of the note in the manner that best reflects the intent of the parties.

In *Goebel,* the association attempted to increase the amount of interest collected, raising the monthly payment and/or extending the term of the loan. The court implied that the absence of explicit language providing for an increase in monthly payments to absorb the increase supported the trial court's construction of the escalation clause against the drafter. The court cited alternative language proposed in a law review article as a solution to the association's interest problem.

In this case, the language "corresponding adjustment in the required monthly payment" fills the gap in the language of the *Goebel* contract, although it does not explicitly permit an adjustment to the length of the loan term. Though the "adjustment" contemplated by First Federal would not extend the loan term beyond the outer limits expressed by the note and the applicable statute, it would require a greater number of principal and interest payments. The absence of express language in the note could be viewed as rendering the escalation clause ambiguous insofar as it is unclear whether an increase in the length of the loan term is permitted. Construction of

the ambiguity against the drafter would not permit this method of implementing an increase. Other rules of statutory construction must also be considered.

Courts must construe contracts to give a reasonable meaning to each provision of the contract and avoid a construction that renders portions of a contract meaningless. *Goebel*, 83 Wis.2d at 680, 266 N.W.2d at 358. The *Goebel* court found its escalation clause was not mere surplusage because it could be enforced if the mortgage was paid off early or if a downward adjustment shortened the amortization term to less than the maximum, leaving room for a subsequent extension. Here, the parties clearly intended that interest could be increased since they included an escalation clause in the note. Federal regulations precluded one of the methods formerly permissible under the language of the escalation clause. The regulation was in effect at the time the parties entered into their agreements with First Federal. The language in the named borrowers' notes with First Federal would be mere surplusage unless enforceable under some circumstances.

One circumstance given in *Goebel* is present here. The notes were amortized over less than the maximum time. We conclude that the solution suggested in *Goebel* is available to the association. Summary judgment for the named borrowers is reversed.

*By the Court.*—Order and judgment reversed.